**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**THE CINCINNATI SPECIALTY**
**UNDERWRITERS INSURANCE COMPANY,**                                     **PLAINTIFF**

**v.**                                     **No. 6:26-cv-06036-SOH**

**ARTHUR BROUSSARD;**
**QUAPAW BATHS, LLC d/b/a**
**QUAPAW BATHS & SPA**                                     **DEFENDANTS**

**COMPLAINT FOR DECLARATORY JUDGMENT**

# EXHIBIT A

ELECTRONICALLY FILED
Garland County Circuit Court
Kristie Womble-Hughes , Circuit Clerk
2026-Mar-05  11:38:05
26CV-26-392
C18ED04 : 18 Pages

# IN THE CIRCUIT COURT OF GARLAND COUNTY, ARKANSAS
## CIVIL DIVISION

ARTHUR BROUSSARD                                                    PLAINTIFF

v.                                        CASE NO. _____

QUAPAW BATHS, LLC d/b/a
Quapaw Baths & Spa;  JOHN DOES 1-3;
And JOHN DOE CORPORATIONS 1-3                                       DEFENDANTS

_____

## COMPLAINT AT LAW
_____

COMES NOW the Plaintiff herein, ARTHUR BROUSSARD, by and through the undersigned attorneys, and for his Complaint against the Defendant, QUAPAW BATHS, LLC d/b/a Quapaw Baths & Spa and JOHN DOES 1-3, state and allege as follows:

### PARTIES, JURISDICTION & VENUE

1.   At all times relevant herein, Plaintiff, ARTHUR BROUSSARD, was a resident and citizens of Sulphur,  Calcasieu Parish, Louisiana.

2.   At all times relevant herein, Defendant, QUAPAW BATHS, LLC, was doing business as Quapaw Baths & Spa, an Arkansas Limited Liability Company licensed to do business and operating the Quapaw Baths & Spa located at 413 Central Ave, Hot Springs National Park, AR 71901 (hereinafter, "Quapaw").  Defendant, QUAPAW BATHS, LLC's registered agent for service of process on file with the Arkansas Secretary of State is Anthony Taylor, who can be served at 210 Central Avenue, Suite 2A, Hot Springs, AR 71901.

3. Upon information and belief, Quapaw owned, operated, and/or controlled the operations of the QUAPAW BATHS, LLC facility located at 413 Central Ave, Hot Springs National Park, AR 71901.

4. That the identities and residencies of John Does Nos. 1 - 3, who are, through information and belief, employees (past and present), agents, contractors and representatives of QUAPAW BATHS, LLC, who are unknown at this time; hence, Plaintiff has designated them as John Does Nos. 1 through 3 and attached the Affidavit of Plaintiff's Counsel as Exhibit "A" pursuant to Ark Code Ann. § 16-56-105. Plaintiff will amend his Complaint to substitute the real names for the pseudo-names upon ascertaining this information.

5. That the identities and residencies of John Doe Corporations Nos. 1 - 3, who are, through information and belief, related corporations to QUAPAW BATHS, LLC and liability insurances companies, corporate contractors and representatives of QUAPAW BATHS, LLC, and/or contractors responsible for the maintenance of the water systems, who are unknown at this time; hence, Plaintiff has designated them as John Doe Corporations Nos. 1 through 3 and attached the Affidavit of Plaintiff's Counsel as Exhibit "A" pursuant to Ark Code Ann. § 16-56-105. Plaintiff will amend his Complaint to substitute the real names for the pseudo-names upon ascertaining this information.

6. This negligence action arises under the common law and statutes of the State of Arkansas.

7. This action was timely filed within the applicable statute of limitations.

8. This Court has subject matter jurisdiction over the parties herein.

9. This Court has personal jurisdiction over the parties herein.

10. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

11. At all times relevant herein, ARTHUR BROUSSARD was a business invitee— and under the care of the Defendant's bath house, QUAPAW BATHS, LLC d/b/a Quapaw Baths & Spa, on or about May 2, 2024.

12. On or about May 2, 2024, ARTHUR BROUSSARD was a paid guest and business invitee of Quapaw.

13. During which time, ARTHUR BROUSSARD used Quapaw's spa and baths.

14. Beginning on or about May 10, 2024, Plaintiff began to feel ill.

15. A few days later, on May 12, 2024, Plaintiff was admitted as an inpatient at West Calcasieu Cameron Hospital in Sulphur, Louisiana. He presented with severe sepsis, complaints of shortness of breath, body aches and febrile.

16. Upon presentation, Plaintiff was noted to be in sinus tachycardia, consistent with systemic infection/sepsis.

17. That same day, on May 12, 2024, ARTHUR BROUSSARD's chest x-ray of his lungs at West Calcasieu Cameron Hospital showed "confluent alveolar infiltrate noted in the lateral aspect of the right upper lobe," "right upper lobe pneumonia" and a small right pleural effusion, which is consistent with findings of Legionnaires' Disease.

18. That same day, on May 12, 2024, ARTHUR BROUSSARD was administered a *Legionella* Sputum PCR panel. The panel confirmed a diagnosis of Legionnaires' disease.

19. Plaintiff remained hospitalized at West Calcasieu Cameron Hospital from approximately May 12, 2024, through May 17, 2024 (approximately 5 days).

20. The Arkansas Department of Health, Louisiana Department of Health, and Centers for Disease Control and Prevention (CDC) were notified of ARTHUR BROUSSARD's diagnosis of Legionnaires' disease pursuant to the agency's mandatory reporting protocol.

21. There were two additional guests of Quapaw who also tested positive for *Legionella* bacteria. Each of these individuals, including ARTHUR BROUSSARD, visited Quapaw and had been exposed to its water supply, such as the use of the baths and spas. These CDC-documented cases occurred between March 2024 and May 2024.

22. According to the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, Legionnaires' disease is a severe type of pneumonia that is caused by inhalation of *Legionella* bacteria from a water source. *Legionella* is found in warm water, particularly improperly maintained hot tubs, pools, water systems, air conditioning cooling towers, showerheads, faucets, stagnant water, spas, and potable water sources that are not adequately cleaned and disinfected. A person can become infected with *Legionella* when they breathe in steam or mist from a contaminated hot tub, swimming pool, or water system.

23. According to the Centers for Disease Control and Prevention, the incubation period for the *Legionella* bacteria to become symptomatic in a person is from two to fourteen days after exposure to the contaminated water source. Plaintiff became symptomatic within that time frame, specifically, within seven to eight days of his exposure to Quapaw's spas, hot tub, baths, and water sources. Plaintiff was not exposed to any other source of *Legionella*-contaminated water besides Quapaw's spas, hot tub, baths, and water sources during the recognized incubation period for the *Legionella* bacteria to become symptomatic.

24. Upon information and belief, while a paying guest at Quapaw, ARTHUR BROUSSARD was exposed to and breathed in, inhaled, or consumed *Legionella*-contaminated water causing him to contract Legionnaires' Disease.

25. Upon information and belief, the source of the *Legionella*-contaminated water was Quapaw's spas, hot tub, baths, water supply, or plumbing system.

26. Legionnaires' Disease is not a communicable disease and cannot be transmitted person-to-person.

27. The *Legionella* bacteria is not a pollutant.

28. The water supplied at Quapaw was a good or product intended for bodily consumption.

29. The water supplied at Quapaw was a good or product intended for human ingestion.

30. The *Legionella* bacteria, which Plaintiff was exposed to, was on or was contained in Quapaw's water.

31. At all times relevant herein, Defendant acted through their agents, servants, employees and/or ostensible agents, and those individuals whom they held out to the public and to the Plaintiff to be agents, servants, employees and/or ostensible agents.

32. Such agents, servants, employees, and/or ostensible agents may include John Does 1-3 and John Doe Corporations 1-3.

33. Defendants were responsible for the inspection, repair and maintenance of the spas, hot tub, baths, water supply, or plumbing system at Quapaw.

34. Defendants owed Plaintiff a duty to exercise due care in the inspection, repair and maintenance of the spas, hot tub, baths, water supply, or plumbing system at Quapaw.

Page **5** of **16**

35. Quapaw's spas, hot tub, baths, water supply, or plumbing system were neither safe nor clean, as they were contaminated with the *Legionella* bacteria.

36. Quapaw's water, swimming pool, and hot tub are goods and products intended for bodily consumption, as they are utilized in the satisfaction of desires and wants relating to the body.

## NEGLIGENCE OF DEFENDANT QUAPAW

37. Plaintiff alleges that Quapaw's conduct in allowing *Legionella* bacteria to thrive in its spas, hot tub, baths, water supply, or plumbing system was an actual and proximate cause of Plaintiff contracting Legionnaires' disease and all damages he has suffered, or can reasonably be expected to suffer in the future, as a result of contracting the disease.

38. Quapaw owed a duty to their guests and patrons, including Plaintiff, as business invitees, to exercise reasonable and ordinary care, including maintaining the premises in a reasonably safe and suitable condition.  Quapaw's duty included cleaning and inspecting Quapaw's spas, hot tub, baths, water supply, or plumbing system to prevent or detect the presence of *Legionella* bacteria.

39. Quapaw's duty is intended to protect its guests and patrons, including Plaintiff, from being exposed to *Legionella* bacteria and suffering the types of harm Plaintiff suffered in this case as more fully set forth below.

40. Quapaw breached their duty to maintain Quapaw's premises in a reasonably safe and suitable condition for their guests and patrons, including Plaintiff, resulting in Plaintiff contracting Legionnaires' disease.

41. Quapaw had actual notice of the unsafe condition of the spas, hot tub, baths, water supply, or plumbing system.

42. Alternatively, Quapaw had constructive notice of the unsafe condition of Quapaw's spas, hot tub, baths, water supply, or plumbing system, as it had existed long enough to make it Defendants' duty to have discovered it in the exercise of ordinary care.

43. Alternatively, Quapaw created the dangerous and unsafe condition of the swimming pool, hot tub, water supply and plumbing system through its own conduct. As such, Quapaw is charged with and imputed with knowledge of the unsafe condition.

44. Plaintiff avers that he did not commit any act or omission which caused or contributed to his damages herein, but rather his resulting damages were proximately caused solely by the negligence of Quapaw, including, but not limited to, the following particulars:

  a. Failing to properly maintain Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

  b. Failing to clean and disinfect Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

  c. Failing to test, or have tested, the water in Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

  d. Failing to inspect, or have inspected, the water in Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

  e. Failing to detect or discover that the *Legionella* bacteria had developed and flourished in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

  f. Failing to warn patrons of the danger in using Quapaw's spas, hot tub, baths, water supply, or plumbing system, which contained and exposed guests and patrons to the *Legionella* bacteria.

g.  Failing to follow governmental guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

h.  Failing to follow the State of Arkansas and Arkansas Department of Health guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

i.  Failing to follow the Centers for Disease Control and Prevention guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

j.  Failing to follow ANSI/ASHRAE Standard 188, *Legionellosis: Risk Management for Building Water Systems*;

k.  Failing to follow ASHRAE Guideline 12-2000, *Minimizing the Risk of Legionellosis Associated With Building Water Systems*;

l.  Failing to follow the hot tub manufacturer's guidelines and instructions to properly clean, disinfect and maintain the hot tub; and

m.  Failing to act as a reasonable and prudent person would under the same or similar circumstances.

45.  Plaintiff further submits that the doctrine of *Res Ipsa Loquitur* is applicable herein. First, the injury to Plaintiff was one that ordinarily would not occur in the absence of negligence; 2) Quapaw's spas, hot tub, baths, water supply, or plumbing system were in the Defendants' control at all times material to the injury; and 3) the injury to Plaintiff happened irrespective of any voluntary action on his part.

**NEGLIGENCE OF DEFENDANTS JOHN DOES 1-3**

46. Plaintiff alleges that Defendants John Does 1-3's conduct in allowing *Legionella* bacteria to thrive in Quapaw's spas, hot tub, baths, water supply, or plumbing system was an actual and proximate cause of Plaintiff contracting Legionnaires' disease.

47. Defendants John Does 1-3 owed a duty to guests and patrons of Quapaw, including Plaintiff, as business invitees, to exercise reasonable and ordinary care, including maintaining and cleaning the spas, hot tub, baths, water supply, or plumbing system.

48. Defendants John Does 1-3's duty is intended to protect Quapaw guests and patrons, including Plaintiff, from this type of harm arising in this manner.

49. Defendants John Does 1-3 breached their duty by failing to maintain Quapaw's spas, hot tub, baths, water supply, or plumbing system in a reasonably safe and suitable condition for guests and patrons, including Plaintiff, resulting in Plaintiff contracting Legionnaires' disease.

50. Defendants John Does 1-3 had actual notice of the unsafe condition of the spas, hot tub, baths, water supply, or plumbing system.

51. Alternatively, the unsafe condition of Quapaw's spas, hot tub, baths, water supply, or plumbing system existed long enough to make it Defendants John Does 1-3's duty to have discovered it in the exercise of ordinary care.

52. Alternatively, Defendants John Does 1-3 created the dangerous and unsafe condition of the spas, hot tub, baths, water supply, or plumbing system through their own conduct, namely, their failure to ensure proper sanitization of the spas, hot tub, baths, water supply, or plumbing

system. As such, Defendants John Does 1-3 are charged with and imputed with knowledge of the unsafe condition.

53.  Plaintiff avers that he did not commit any act or omission which caused or contributed to his damages herein, but rather his resulting damages were proximately caused by the negligence of Defendants John Does 1-3, including, but not limited to, the following particulars:

a. Failing to properly maintain Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

b. Failing to clean and disinfect Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

c. Failing to test, or have tested, the water in Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

d. Failing to inspect, or have inspected, the water in Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

e. Failing to detect or discover that the *Legionella* bacteria had developed and flourished in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

f. Failing to follow governmental guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

g. Failing to follow State of Arkansas and Arkansas Department of Health guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

h. Failing to follow the Centers for Disease Control and Prevention guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

i. Failing to follow ANSI/ASHRAE Standard 188, *Legionellosis: Risk Management for Building Water Systems*;

j.  Failing to follow ASHRAE Guideline 12-2000, *Minimizing the Risk of Legionellosis Associated With Building Water Systems*;

k.  Failing to follow the hot tub manufacturer's guidelines and instructions to properly clean, disinfect and maintain the hot tub; and

l.  Failing to act as a reasonable and prudent person would under the same or similar circumstances.

54.  Plaintiff further submits that the doctrine of *Res Ipsa Loquitur* is applicable herein. First, the injury to Plaintiff was one that ordinarily would not occur in the absence of negligence; 2) Quapaw's spas, hot tub, baths, water supply, or plumbing system were in the Defendants John Doe 1-3's control at all times material to the injury; and 3) the injury to Plaintiff happened irrespective of any voluntary action on his part.

**NEGLIGENCE OF DEFENDANTS JOHN DOE CORPORATIONS 1-3**

55.  Plaintiff alleges that Defendants John Doe Corporations 1-3's conduct in allowing *Legionella* bacteria to thrive in Quapaw's spas, hot tub, baths, water supply, or plumbing system was an actual and proximate cause of Plaintiff contracting Legionnaires' disease.

56.  Defendants John Doe Corporations 1-3's owed a duty to guests and patrons of Quapaw, including Plaintiff, as business invitees, to exercise reasonable and ordinary care, including maintaining and cleaning the spas, hot tub, baths, water supply, or plumbing system.

57.  Defendants John Doe Corporations 1-3's duty is intended to protect Quapaw guests and patrons, including Plaintiff, from this type of harm arising in this manner.

58.  Defendants John Doe Corporations 1-3's breached their duty by failing to maintain Quapaw's spas, hot tub, baths, water supply, or plumbing system in a reasonably safe and

suitable condition for guests and patrons, including Plaintiff, resulting in Plaintiff contracting Legionnaires' disease.

59. Defendants John Doe Corporations 1-3's had actual notice of the unsafe condition of the spas, hot tub, baths, water supply, or plumbing system.

60. Alternatively, the unsafe condition of Quapaw's spas, hot tub, baths, water supply, or plumbing system existed long enough to make it Defendants John Doe Corporations 1-3's duty to have discovered it in the exercise of ordinary care.

61. Alternatively, Defendants John Doe Corporations 1-3's created the dangerous and unsafe condition of the spas, hot tub, baths, water supply, or plumbing system through their own conduct, namely, their failure to ensure proper sanitization of the spas, hot tub, baths, water supply, or plumbing system. As such, Defendants John Doe Corporations 1-3 are charged with and imputed with knowledge of the unsafe condition.

62. Plaintiff avers that he did not commit any act or omission which caused or contributed to his damages herein, but rather his resulting damages were proximately caused by the negligence of Defendants John Doe Corporations 1-3, including, but not limited to, the following particulars:

   m. Failing to properly maintain Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

   n. Failing to clean and disinfect Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

   o. Failing to test, or have tested, the water in Quapaw's spas, hot tub, baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

   p. Failing to inspect, or have inspected, the water in Quapaw's spas, hot tub,

baths, water supply, or plumbing system, which allowed *Legionella* bacteria to develop and flourish;

q. Failing to detect or discover that the *Legionella* bacteria had developed and flourished in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

r. Failing to follow governmental guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

s. Failing to follow State of Arkansas and Arkansas Department of Health guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

t. Failing to follow the Centers for Disease Control and Prevention guidelines and/or regulations to prevent *Legionella* from developing and flourishing in Quapaw's spas, hot tub, baths, water supply, or plumbing system;

u. Failing to follow ANSI/ASHRAE Standard 188, *Legionellosis: Risk Management for Building Water Systems*;

v. Failing to follow ASHRAE Guideline 12-2000, *Minimizing the Risk of Legionellosis Associated With Building Water Systems*;

w. Failing to follow the hot tub manufacturer's guidelines and instructions to properly clean, disinfect and maintain the hot tub; and

x. Failing to act as a reasonable and prudent person would under the same or similar circumstances.

63. Plaintiff further submits that the doctrine of *Res Ipsa Loquitur* is applicable herein. First, the injury to Plaintiff was one that ordinarily would not occur in the absence of negligence; 2) Quapaw's spas, hot tub, baths, water supply, or plumbing system were in the Defendants John Doe 1-3's control at all times material to the injury; and 3) the injury to Plaintiff happened irrespective of any voluntary action on his part.

## DAMAGES

64. ARTHUR BROUSSARD alleges that, as a result of the enumerated acts and omissions of the Defendants, ARTHUR BROUSSARD sustained the following non-exhaustive damages: (1) bodily injury, the full nature, extent, and permanency of which is not yet determined; (2) past and future loss of earnings; (3) past and future medical expenses; (4) loss of earning capacity; (5) past and future pain and suffering; (6) past and future mental anguish and emotional distress; (7) permanent impairment or disfigurement; and (8) past and future loss of enjoyment of life.

65. Plaintiff further alleges that the Defendants knew that Quapaw's spas, hot tub, baths, water supply, or plumbing system were contaminated with *Legionella* bacteria, and that the Defendants failed to remedy or warn its guests or patrons, including ARTHUR BROUSSARD, of this dangerous condition. Alternatively, Plaintiff alleges that the Defendants knew, or ought to have known, that by failing to clean and inspect the hotel's swimming pool, hot tub, or other water sources, contamination with *Legionella* bacteria was likely to occur, and that the Defendants disregarded this clear risk of harm to its guests and patrons, including ARTHUR BROUSSARD. Under both scenarios, the Defendants knew that their conscious and reckless disregard for the potential consequences of *Legionella* contamination would naturally and probably result in its guests and patrons, including ARTHUR BROUSSARD, contracting Legionnaire's disease and suffering severe injury or death, from which malice may be inferred.

66. According to CDC communications, from mid-2018 to early 2019, there were three (3) Quapaw guests who visited its facilities, and each subsequently tested positive for *Legionella* bacteria days later. The CDC refers to these three confirmed *Legionella* cases as a "cluster," which

Page **14** of **16**

is defined by the CDC as "two or more cases associated with the same possible source during a 12-month period." These three 2019 cases occurred within one-year of each other and were linked to Quapaw as the source. The first documented customer to fall victim to Quapaw's *Legionella* bacteria was sometime in July 2018. The second, who was a Texas resident that visited Quapaw sometime in late November of 2018, also had a confirmed *Legionella* exposure. The third died in June of 2019. Ten days later, she fell ill on June 22nd, tested positive for *Legionella*, and died days later.

67. Accordingly, ARTHUR BROUSSARD seeks punitive damages against the Defendants in an amount to be determined at trial by a properly empaneled jury.

68. PLAINTIFF DEMANDS A TRIAL BY JURY.

WHEREFORE, Plaintiff prays that the Defendants be ordered to appear and answer the Complaint herein; that upon final trial of this action to a jury that Plaintiff be granted judgment against the Defendants for compensation for the nature, extent, duration, and permanency of ARTHUR BROUSSARD's injuries, past and future medical expenses, past and future pain and suffering, past and future loss of enjoyment of life, past and future mental anguish and emotional distress, past and future lost earnings, loss of earning capacity, permanent impairment or disfigurement, and punitive damages; and that Plaintiff recovers costs of suit herein expended and interest at the legal rate, including pre-judgment interest, on all of the above, and that Plaintiff be awarded such other and further relief, both at law and in equity, to which this Court, in its discretion, may find him to be justly entitled.

Respectfully submitted,

ARTHUR BROUSSARD, PLAINTIFF


By: /s/ *Connie Grace*
    Connie Grace, ABN 97101
    M. Justin Minton, ABN 2009112
    MINTON LAW FIRM
   2610 Salem Road
   Benton, AR 72019
   (501)794-0001 Telephone
   (501)-274-0222 Facsimile


*ATTORNEYS FOR PLAINTIFF*

Page **16** of **16**

## EXHIBIT A

## IN THE CIRCUIT COURT OF GARLAND COUNTY, ARKANSAS
### CIVIL DIVISION

**ARTHUR BROUSSARD**                                                    **PLAINTIFF**

v.                                              CASE NO. _____

**QUAPAW BATHS, LLC d/b/a**
**Quapaw Baths & Spa;**
**JOHN DOES 1-3; and**
**JOHN DOE CORPORATIONS 1-3**                                          **DEFENDANTS**

### AFFIDAVIT OF PLAINTIFF'S COUNSEL

COMES NOW, Connie Grace, of the Minton Law Firm, counsel of record for the Plaintiff, and being of sound mind, legal age, and otherwise competent to testify, states that the following facts are true based on personal knowledge and observation:

1. I am a licensed attorney in good standing in the State of Arkansas and one of the record attorneys for the Plaintiff.

2. The Plaintiff has made reasonable efforts to obtain the individual names of the individuals who may be additional defendants in their current Complaint.

3. Because the identities of these individuals are unknown, the Plaintiff has designated John Doe Nos. 1 through 3 and John Doe Corporations 1-3 for the purpose of tolling the statute of limitation pursuant to Ark. Code Ann. §16-56-125.

4. The pseudo-names will be substituted with the actual name upon the determination of the actual names of the Defendants if applicable.

5.  Further, Affiant sayeth naught.

_Connie Grace_

Connie Grace, ABN 97101

## ACKNOWLEDGEMENT

STATE OF ARKANSAS)
COUNTY OF SALINE)

On this day, the __5th__ day of March, 2026, before me, the undersigned, a Notary Public,

duly qualified and acting in and for the county and state aforesaid, personally appeared Connie

Grace, to me well known to be the person whose signature appears in the foregoing instrument and

stated that she has executed same for the consideration, uses and purposes therein stated.

_Ashley Staggs_

NOTARY PUBLIC

My Commission Expires:

__10/26/2032__

